This is for 19-0-4-1-6 in May the marriage of Lopez and Ortiz for the Appalachians we have Ms. Blackburn and for Appalachians Ms. Ripley Ms. Blackburn Next we have the court counsel As indicated my names is Ms. Blackburn I represent the appellant Antonio Lopez in this for the court today This case at the trial court level was a motion for termination of maintenance pursuant to 750 ILCS 5-5-10 The issue presented to this court today for review is whether the trial court erred in denying Dr. Lopez's motion to terminate maintenance in this case The standard of review for this appellate court is an abuse of discretion and as I indicated the controlling statutes are 5-10 and 5-0-4 5-10 of course outlines the modification standard when terminating maintenance and the factors that a court is to consider when terminating And of course refers back to section 5-0-4 and indicates that the court is to also consider those particular factors It is Dr. Lopez's position that in this case the court erred in its consideration of those factors and erred in determining that he was not entitled to a termination of his maintenance obligation With regards specifically to the relevant factors the first factor in 5-10 of course is any change in employment status of either party and whether those changes have been made in good faith The court rightfully found that changes in Dr. Lopez's employment were all made in good faith Originally Dr. Lopez was employed here in Springfield with Prairie Cardiovascular Shortly after the divorce Ms. Ortiz relocated to the state of California taking their two minor children with her And so Dr. Lopez subsequently left the state of Illinois to join them So he had a change of employment as a result of that And then while he was in California he had to make a subsequent change of employment and relocate to the state of Utah for a period of time before returning to the state of California where he is presently Ms. Ortiz was unemployed at the time of the dissolution of the marriage She is now employed as a caretaker for the party's adult disabled son and she receives income through a program out in the state of California to provide her with monies for providing those services for their adult disabled son Is it clear that that program will be continued when she gets compensated? That never came up in court so I don't know the answer to that It's a program she had been in I believe since 2014 and had been receiving monies pursuant to that program since that time I do know that the child received program assistance from the San Diego Regional Center for Disabled People from the time that he relocated out there And that was part of the reason actually for relocating him out there was because they believed that he could get better services out there in the state of California The second factor is the efforts if any that any party has made, the party receiving payments has made to become self-supporting and the reasonableness of those efforts And while Dr. Lopez understands that Ms. Ortiz has committed a fairly significant amount of time to raising their disabled son There was no evidence presented that she had really made any effort prior to receiving these monies for being his caregiver to being employed outside the home The testimony was of course that the disabled son attended school, regular school, during his minority and I believe up until the age of 20 because he was allowed to do that in the state of California And then subsequent to that has been participating in day programs which run relatively similar to the school schedule So while she may not have been able to be employed full-time, she made no efforts to even really be employed on a part-time basis So I don't think that the court finding that she could not be employed or made some sort of attempt to be employed was reasonable The third factor is any impairment in the present and future earning capacity My client as the court was aware from the testimony is 63 years of age He was a practicing cardiologist until approximately 2014 He had begun experiencing some health issues that were no longer permitting him to be in the operating room So he left that employment, relocated back to the state of California where he is now in the research area and is basically a salaried employee So he's probably at the top of his earning capacity with that employment We do agree as well that Ms. Ortiz being 60 years of age is probably what she's making from being a caregiver Is probably, if not at the top of what she's going to be able to earn, very close to the top of what she's going to be able to earn The biggest factor and the one that the court really gave no consideration to in this case Is the duration of the maintenance payments that have previously been paid relative to the length of the marriage If you review the court's order, the court makes little to no mention of this factor And the court does not even go as far as running a calculation as required by 504 And doesn't make any finding that the application of the guidelines is inappropriate in this case So the parties in this case were married for 12 years, separated for 2 So the date of the marriage to the date of filing the petition was roughly 10 years And so based on the duration formula that is in 504 She would have been entitled to 4 years and 4 months worth of maintenance Dr. Lopez has, by the time that we went to trial, had paid 21 years of maintenance to Ms. Ortiz in this case Which is about double the amount of time the marriage lasted and 5 times longer than the statute Provides that he should have been ordered to have paid maintenance Factor number 6 is the property, including retirement benefits, that was awarded to everybody Each of the parties in the judgment and the present status of those And the court essentially, in its order, outlines what everybody received But does not really give any consideration to the fact that Ms. Ortiz received in excess of 100% of the marital estate Because at the time of the divorce, there really were no assets in the marriage There was no home, there was one vehicle, a bank account $34,000 in profit sharing, $25,000 in a retirement account A Plymouth Voyager And my client, there were some debts totaling a little over $156,000 All of which were given to my client in the divorce And then he received the profit sharing account, the retirement account, his bank account, and the Volkswagen And Ms. Ortiz received the Plymouth Voyager and her bank account But in addition to that, even though the marital estate was not solvent My client agreed to give Ms. Ortiz a little over $94,000 The purpose of that being so that she could relocate to the state of California And so that she could purchase a home for herself and the minor children Ms. Ortiz does not presently own a home So if she did purchase a home with that money, that home no longer exists Factor number seven is the increase or decrease in each party's income since the prior judgment This is, in my mind, an interesting issue Because the court uses the 2007 date as the date of the last order But there was, in that order that he's referring to, is an order out of California And there was no evidence put before the court that that hearing in 2007 was a modification proceeding And I can only presume that it was not a modification proceeding Because it was California where this particular issue originated And the California court declined jurisdiction over the maintenance issue So it's hard for me to believe that in 2007 they took up the maintenance issue and did a modification But then in 2018 we're saying we don't believe we have any jurisdiction  Ms. Blackburn, in regards to your client's income It makes me think of a question I had for you And that is, it appears that your client, in asserting net monthly income in this proceeding Factored in the child support obligation, identifying it as a deduction from the gross monthly income But then also, and that appeared in the written closing argument But then also, in terms of the itemization of expenses, the financial affidavit Included the child support obligation as a monthly living expense The same figure, $3,674 Can you comment on that? Is there a double counting of the child support obligation? When you say that he's using it as a deduction, are you referring to You're referring to my client's financial affidavit? No, in terms of identifying it as a deduction to gross monthly income He testified at hearing in that regard And then also set forth that in his written closing argument So my client's financial affidavit, anyway, does not count it twice My client's financial affidavit, where it shows his monthly deductions The only deduction that is not a deduction from his pay for non-support things Is the $5,000 in maintenance And then of course, down under the minor and dependent children's expenses We listed that child support amount that he pays, that $3,674 But we don't count it in the deductions that are on the initial pages Page 3 of the financial affidavit So you're saying within that one document, the financial affidavit The child support obligation is only factored in once Correct As an expense Correct Notwithstanding that he might have testified that In calculating net monthly income, the child support deduction was taken out And that is probably, you are probably accurate He probably did testify to it that way And I only say that because he was probably testifying to his pay stub And it is an automatic deduction on his pay stub Okay, thank you So I would assume that's correct With regard to the income that Dr. Lopez has had Since the divorce proceedings were finalized Which is the date that I believe we are modifying from At the time of the divorce, he was earning roughly $400,000 here in Springfield When he relocated to California, then in 2002 He was making $250,000 And then has made between $250,000 and $397,000 in 2018 Now the difficulty, as the court is probably aware In some of this calculating of the income Is because they entered into an agreed settlement In 1998 when they divorced Nothing in that settlement indicates how they came up with his child support obligation Or maintenance obligation So whether they were using gross income Whether they were using some sort of net income calculation Whether they were using no calculation at all And those are just numbers they agreed to I was not trial counsel at that point in time So I have no idea how those numbers were arrived at What I do know, though, is he had a significant decrease in income And it has taken him from 2002 until 2018 To come anywhere near making what he was making in 1998 Here in Springfield Ms. Blackburn, another question It appears in this case that your client elected to seek termination Of his maintenance obligations As opposed to seeking a reduction in maintenance Is that accurate? That is accurate In our petition, though, we did pray as we normally would For any sort of other relief And so while we couched it as a motion to terminate Obviously it was filed under the modification slash termination portion of the statute So there could have been a reduction Based upon our all-encompassing final request That if there's any other relief that the court deems appropriate Then that was an option for the court to do Did you argue for a reduction In making the alternative request in the trial court? No, I did not I argued only for a termination On appeal, have you suggested That the court would have the authority to provide that alternative relief? I did not put that in my briefs, no That the court would have that option But of course there is a fair amount of discussion About the needs of Ms. Ortiz And that her needs, taking into account what her real expenses are Which are the expenses outlined on her bank account statement Are nowhere near the expenses that she lists on her financial affidavit And so even if she does Maybe not have $5,000 in excess income That there is a significant amount of excess income that she does have There is also a fairly lengthy discussion in the briefs About this money that she is giving, basically gifting To her older son, who is not disabled And has graduated with a degree and is employed But she has given him in the 15 month period That I have bank statements from Over $70,000 Including taking the income that she receives from this program In California And having it automatically deposited into the account That she shares with him But she acknowledges that she only uses for emergency circumstances And then in addition to that income Which automatically goes into his account Then she also transfers money from her personal account That she has into this joint account As well as makes ATM deposits into that account And she testified on cross-examination That nobody makes ATM deposits into that account but her Nobody transfers money into that account but her And so there is no other source of income Where Andreas, who is the older son Could have been obtaining this money from She said the only money Andreas puts into that account Is what he earns from his employment Everything else is money supplied by her And then of course in that same vein There were transfers that she made back to her account When she had these emergency circumstances That she testified about That 70 plus thousand that I was just talking about In a 15 month period Accounts for the fact that she transferred 11,000 Back to herself during that same period of time So how much in monthly income does she get to Andreas? She gets her California payment is $4,100 a month And that fluctuates a little bit based on whether or not She has some overtime But it's roughly $4,100 a month And then on average she deposits and or transfers To his account an additional almost $2,000 $1,900 and some dollars So you're saying she gives $6,000 a month? Yes And she doesn't spend any of that for herself? No Or her other child? No, that's correct Over a 15 month period She transferred $11,000 back to herself Of that $80,000 That she either deposited or transferred into Andreas' account Well does this 15 month period Is there any reason for this court to believe that That would be what is going to happen in the future? As far as what she gives to Andreas? Well I believe her testimony was that That is what she has done historically And so absent this program ending As the court suggested could happen I don't have any reason to believe that She wouldn't continue to do the same thing she's done For well ever since she began receiving money From that organization and plan And that money is tax free? That money is tax free As a matter of fact all the money that she receives Because most of child support is tax free That money is tax free The only taxable income she has Is the maintenance that my client provides to her In your position your general catch all Prayer for relief would allow this court To reduce if not terminate Oh yes Yes I believe it would I want to ask a question about that I was thinking that the tax act The new tax act is not new anymore But from a couple years ago Changed the law as to who gets the deduction For maintenance Am I incorrect? No you are correct about that But my understanding of the law Is that that does not apply to maintenance obligations That were already in place Okay So if there were a modification to this one To this maintenance obligation Then I believe it would be a tax free one Because of the change in the law So it would no longer be taxable But it is taxable still under that 1998 one Because I think the law grandfathered in All of those people that already had obligations And then one final thing your honors Before I run out of time In addition to those monies that we've been talking about That Ms. Ortiz receives It is also important to point out That she has a number of benefits From the state of California for Marco The disabled adult son That she is not even utilizing The state of California Would pay for a day program for her They would pay travel reimbursement For her to drive Marco back and forth To these day programs Which of course would save significantly On her transportation expense Which I think she had at roughly $1400 a month That she was spending in gas And there is also respite care services She indicated on her financial affidavit That she pays some day care or child care For people to provide care for Marco But the state of California actually provides her With a significant amount of respite care 30 hours a month 30 hours of respite care each month To help offset the cost of any child care providers Thank you Ms. Blackford Thank you You'll have additional time on your button Thank you Ms. Strickland Thank you May it please the court Counsel This is a very unique and factual specific case I don't want to belabor all of the facts But I think there's a few important ones to point out Parties were married in 1986 Shortly thereafter Two children were born One in 91 and one in 92 Ms. Ortiz stopped working in 1990 So before both of the children were born After the children were born She was a stay-at-home mother While Dr. Lopez earned a substantial income Here in the Springfield area As a cardiologist One of the children was severely disabled The parties divorced in 1998 When the children were still young Roughly approximately ages 6 and 7 What is important is that In the parties marital settlement agreement Which both of them agreed to There's very specific language Regarding Marco, the disabled son And how his disability would affect Ms. Ortiz's ability to be employed Specifically that section stated It is anticipated that given the disability Of the minor child of the parties Marco Lopez And the amount of time and attention Required of Elena As a result of such disability Elena will be unable to obtain employment During the minority of Marco Lopez And Mr. Ripplinger I'm not trying to take you off your game But honestly I don't think that That is a major concern I'm not trying to speak for everybody here But really I think it's more a matter of Looking at the amounts of monies That she is receiving or has available to her In relation to her actual expenses The fact that she's moving money off To an adult son And then just the overall change in circumstances The real question is Why shouldn't we be looking at that money And the amounts of money she's getting As some reason for Why there should have been Maybe not necessarily a termination But a modification One of the things that I think is hard for us to look at When we look at the expenses on the financial affidavits For both parties They're both in a very expensive area of the country So when some of those expenses seem pretty extravagant I think on both parties we could argue That they are large expenses Because of the area of the country they live in So when there is $1,500 a month for gas expenses And Elena testified regarding how much She has to drive Marco around Or what they do for entertainment Or to keep him calm on those things The expenses don't seem to be as extravagant And I'll speak for myself I don't think anybody slights her The amount of sacrifice that she has put in Raising a son with severe disabilities And that's not the issue But if, for example, Ms. Blackburn points out that There's additional monies available to her from the state Which would reduce some of these expenses That she does not take advantage of Is there some rationale for that? Judge, I don't believe that in the testimony Proved that there were significant expenses or monies That she was not taking advantage of I believe that her testimony was that She was looking for programs And that the expenses that Ms. Blackburn mentioned For fuel or driving around Was something that was not actually an option for Marco And I believe that some of those, if I remember correctly Would only be available if he was attending One of the day programs And not just for regular transportation expenses So they might be available as services They may not necessarily be available to him Correct Okay Did the trial court comment on the amount of money That was going to Judge Andre? I believe that the trial court did mention that in its order And this is a joint account So this isn't just funds that are being transferred to an account Where Ms. Ortiz does not also use The trial court noted, and I believe the testimony was That she does often take withdrawals from this account She uses this So when we talk about emergencies That we would think an emergency might not happen very often I think in this matter What she deemed to be emergencies Happen quite often And so there are some of those funds That I believe she has provided to her son I don't believe that there was any proof In any accounts or statements That this is something that has gone on For a period of time longer than 15 months So to characterize that she's just giving this money away Because there's extra money I don't think would be very accurate Was there an explanation for why this process is involved? I don't recall an exact testimony on that It's my understanding I think they don't live in the same area So nobody asked her Why would you give your adult emancipated son $49,000 a year? I think again I would disagree that she's just giving him $49,000 I think it's put into this joint account That he has access to And can use some funds on an occasion But I just would not agree Why? Can anybody ask why? I think she's a mother devoted to her sons And willing to try and do anything And everything she can to help her son And that's commendable But if your way of justifying Continuing to get this money From your ex-husband For substantially longer Than you were even married Because I want to give more money To my adult emancipated son That's probably not a particularly justifiable reason And I think if you look at her financial affidavit There's debts listed on her financial affidavit So I think her debt has increased Although she might not be making the smartest decision With some of that money I don't think it would show the court That she is not in need of that money It could be used to pay other expenses That she has instead of going into debt It could be used to provide herself A better, more reliable vehicle As was part of the testimony At the trial court So I think there could be a better way, possibly But it does not show that it's just extra money That she does not need Deposits are made on a regular basis A monthly basis to that joint account, correct? Yes And has she withdrawn money from that account? Yes How much has she withdrawn from that account? I don't have an exact figure on that In the 15 month period of time I don't have a number for you, I apologize But there are large withdrawals that are taken out of there So money is moved frequently Between her account And also this joint account I think she tries to use it as a way to save And sometimes that doesn't always happen But it goes back and forth quite a bit And as the trial court noted Large withdrawals taken out of that by Ms. Ortiz Okay, so there have been large withdrawals By respondent from the joint account Correct, I believe so, Judge Well, counsel In the reply brief In the conclusion portion It is stated that Petitioner asks that He be granted Such other affirmative relief Relief that this court deems fair and just Do you think that would allow this court to reduce The maintenance rather than terminate it? As the opposing counsel has argued Your Honor, I don't believe it does I mean, that was not a prayer for relief That we were specifically Presented to the trial court at the time of the hearing There were no calculations presented to the court By the petitioner or the respondent Well, could we remand it to the trial court And determine what would be a fair amount A fair amount to reduce the maintenance award? I believe that that could occur But it was something that was not determined or considered By the trial court at the time of the hearing I believe in this matter that the trial court Did consider each and every factor That it was to consider I think that The court spent an incredible amount of time Considering those factors And one is not more important than the other When the court found that there has been A substantial change in circumstances The court also found, though, that it was not just Inequitable to terminate My client's maintenance And I think given very specific facts in this case That that is a reasonable conclusion Based on the amount of time She has not worked outside of the home Based on the amount of time that the parties anticipated She would not be working The language in the American Settlement Agreement Anticipates a 20-year period of time When both parties knew That Ms. Ortiz would not be working So she does not have the same ability To earn income To gain the education Or what she would need to earn any of that income If her maintenance obligation is terminated She would no longer be able to care for her son The party's son, not just her son In the home And as the trial court noted in the order He would otherwise be institutionalized Given the other factors that the court considered I do think it is appropriate for the court To look at all of the evidence As of the 2007 California order I believe that the appellant's argument That we should be looking at the judgment And not that order I think is misplaced There would have been no need for an order in 2007 If everyone was just going to continue The maintenance obligation That was otherwise already entered By the court in the judgment So I was not a part of the proceedings in California Nor was the appellant's counsel But I don't think we can just assume That there was no reason for that order being entered And we should ignore the last time An order was entered regarding the maintenance obligation After that, since nobody knows what the order was Were the amounts of money she was receiving before the order Different than the amounts of money she was receiving after the order? No, Your Honor, they were the same They were not different So it obviously didn't affect maintenance But one of the differences that there was, Your Honor At the time in 2007 Dr. Lopez was making only approximately $250,000 to $280,000 a year So from that order to present There was an increase of almost $200,000 So I think that is an important distinction Of the change that occurred from 2007 to now But nobody knows what the 2007 order was? Other than that the maintenance obligation was to continue Why did the California court pick up the issue in 2007 And then kick it back to Illinois recently in 2018? That's a very good question Thank you, what's the answer to that? I don't necessarily have an answer for it, Your Honor You know, I believe the language In the partisan marital separation agreement said That the Illinois courts would retain jurisdiction Over that specific issue But it's a question I think all of us have asked As to why this issue was not decided And dealt with by the California courts What is your response to the opposing counsel's argument That the statutory formula, if applied in this case Would mean that maintenance should have only been paid For a little over four years? I agree that according to the statutory calculations That that would be what the statute would first calculate But I believe section 504 also gives the court The ability to deviate from that amount So if we were to use that amount And to apply it in this specific scenario That would have been during a period of time When the parties had already acknowledged That Ms. Ortiz would not even be able to be employed So four and a half years from the time the parties Had divorced the minor, Shiley Marco Would have only been approximately nine, ten years old And we would still be in that period of time When both parties acknowledged That she would not have the ability to be employed at all So to say that that would be the appropriate time period With this specific factual situation I do not think that... So you then agree that the formula spelled out In that statutory section Applies to this situation Where we've got a motion to either terminate or modify? I do believe, because it's my understanding That we should be applying this section As of the time that the petition was filed And at the time the petition to terminate was filed I do believe that that was the statutory scheme Or the rules in the statute The trial court in this case Heard all of the testimony of the parties The trial court weighed credibility The trial court heard all of the evidence in this matter And I think it's very clear In the very detailed ten-page single-space order That the trial court considered All of the statutory factors in this matter I do believe that a reasonable person Could take the view that was Offered and decided by the trial court I do not believe that there was an abuse of discretion In this matter And I ask that you affirm the trial court's ruling Thank you, Ms. Whitburn Ms. Blackburn Your Honor, first with regard to the Single-space ten-page order I would agree that it is a very, very lengthy order But if the court reviews the order A significant portion of that time And words spent on that order There's nothing more than a restatement of facts It's not a review of While the court does go through a review Of each and every statutory factor A large part of this order is not The court doing that Second, with regard to Ms. Riplinger's argument that everybody acknowledged That Ms. Ortiz was likely not going to be able to work During the child's minority And if I understood her correctly She was in some way suggesting That the time period should not have started Until after Marco reached adulthood And even if that is the case Marco is now 27 years old So we are well beyond the four years and four months That Ms. Ortiz should have received If the court accepts that argument That we should not have begun this Until Marco became an adult I don't like that argument I don't think that's an appropriate argument I think all that was in the marital settlement agreement Was an acknowledgment by everybody Of what the situation was Everybody was acknowledging the situation was That she was probably not going to be able to be employed Full time so long as Marco was a minor It was not that she wouldn't be employed In regards to her potential earnings though She's getting paid $50,000 a year from State California, right? Yes In terms of her potential earnings Her potential income It's not going to be more than $50,000 a year, is it? No, well probably not significantly more I mean I assume she could have some sort of part time employment If Marco was in a day program Which I believe is what the trial court even acknowledged Was a possibility And I believe she testified that it was a possibility That she could do that If Marco was regularly and consistently in a day program But I agree with the court The amount of money that would probably amount to Is probably insignificant As far as an increase goes Your honors With regard to the suggestion about the 2007 order I believe in looking at that 2007 order As best as I can tell And frankly California doesn't write their orders like we do So it's a little difficult to tell But it appears to me it's nothing more than an enforcement proceeding Because Dr. Lopez at that point in time Was admonished by the California court That if he didn't believe he could make the $5,000 a month payment That he was supposed to be making He needed to find employment where he could Which is what resulted in him leaving And going to the state of Utah for a period of time Because he could earn more there Also I would disagree with Ms. Riplinger's statement That Ms. Ortiz's income situation was the same in 2007 As it is currently She did not begin receiving that IHSS money until 2014 So as of 2007 Her only income that I'm aware of Was the income or the money that she was receiving from my client So I believe that that has changed How about what she said about Her client's withdrawal of money from the joint account Right, your honor I don't recall any large withdrawals from this account And what I recall in going through the bank statements And I outlined it in my reply brief Is that she transferred $17,878 from her account To Andreas' account And deposited another $11,456 over that 15 month period During that same 15 month period She transferred back to her own account $11,659 But these were not large withdrawals These were from time to time She would withdraw monies back to Or excuse me, transfer monies back to her account And then with regard to the question That the court asked about these services And I believe Ms. Ricklinger said she did not believe that The minor child was entitled to those services That those were just services that were offered But there was an evidence deposition taken Of Marco's case worker in San Diego A gentleman by the name of Jeffrey Nelson And Mr. Nelson testified That the San Diego Regional Center Has authorized the payment of the following for Marco 23 days of payment per month for his day program Travel reimbursement when Elena transports Marco Back and forth to his day program And 30 hours of respite care each month At $28.95 per hour So those are authorized services According to San Diego Regional Center Based upon the testimony of the case worker in this case And finally, your honors Just going back to the whole modification argument And if that's an argument that the court I believe that the court can do Either termination or modification Obviously my client believes That he has paid $1.26 million over 21 years And it's time for him to be done paying maintenance But in the event that the court disagrees with that I think that the bank statement showing That there are expenses over 15 months That average under $10,000 a month And according to her financial affidavit Her expenses are I believe around $12,600 So obviously the accurate depiction of what her expenses are Is in those bank statements and not in the financial affidavit Thank you Ms. Blackburn We'll take this matter under advisement Court will be in recess